IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOYCE LYONS,<br><br>        Plaintiff,<br><br>v.<br><br>DRIVETIME CARSALES COMPANY, LLC d/b/a DRIVETIME PLYMOUTH MEETING; JON EHRLINGER; and BRIDCREST ACCEPTANCE CORP.,<br><br>        Defendants. | CIVIL ACTION NO. 2:18-cv-03517 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Respectfully submitted,

Dated: August 31, 2018

*/s/ Martin C. Bryce, Jr.*
Martin C. Bryce, Jr., Esq.
Jenny N. Perkins, Esq.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999
bryce@ballardspahr.com
perkinsj@ballardspahr.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................... 1

III.   ARGUMENT ...................................................................................................... 5

      A.     Standard Of Review. ............................................................................... 5

      B.     The FAA Requires Arbitration of Plaintiff's Claims. ............................. 6

            1.     A Valid And Enforceable Arbitration Agreement Exists. .......... 8

            2.     Plaintiff's Claims Fall Squarely Within The Scope Of the
                  Arbitration Agreement. ............................................................... 9

      C.     Bridgecrest and Ehlinger Are Entitled to Enforce The Arbitration
          Agreement. .............................................................................................. 12

      D.     The Action Must Be Stayed Pending Arbitration. ................................. 12

IV.    CONCLUSION .................................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995)................................................................................................6

*Anderson v. Delta Funding Corp.*,
    316 F. Supp. 2d 554 (N.D. Ohio 2004)................................................................7

*AT&T Technologies, Inc. v. Comm. Workers of Am.*,
    475 U.S. 643 (1986)...........................................................................................5, 9

*Berkery v. Cross Country Bank*,
    256 F. Supp.2d 359 (E.D. Pa. 2003) ..................................................................11

*Bill Gray Nissan, Inc. v. Am. Suzuki Motor Corp.*,
    No. 02-450, 2002 U.S. Dist. LEXIS 17297 (W.D. Pa. July 26, 2002) ...................11

*Black v. JP Morgan Chase & Co.*,
    2011 WL 3940236 (W.D. Pa. 2011) .....................................................................2

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006).............................................................................................9

*Cendant Corp. v. Forbes*,
    72 F. Supp. 2d 341 (S.D.N.Y. 1999)..................................................................12

*Citizens Bank v. Alafabco, Inc.*
    539 U.S. 52 (2003)...........................................................................................6, 7

*Collins v. Burlington N. R. Co.*,
    867 F.2d 542 (9th Cir. 1989) .............................................................................12

*Credit Acceptance Corp. v. Davisson*,
    644 F. Supp. 2d 948 (N.D. Ohio 2009)...........................................................7, 10

*Doctor's Assocs. v. Casarotto*,
    517 U.S. 681 (1996).............................................................................................8

*Elinch v. Discover Bank*,
    No. 12-1227, 2013 U.S. Dist. LEXIS 12659 (E.D. Pa. Jan. 29, 2013)................11

*Fluor Daniel Intercontinental, Inc. v. General Elec. Co.*,
    No. 98 Civ. 7181(WHP), 1999 WL 637236 (S.D.N.Y. Aug. 23, 1999)................7

*Gedid v. Huntington Nat. Bank*,
    No. CIV.A. 11-1000, 2012 WL 691637 (W.D. Pa. Feb. 10, 2012) ..........................................2

*Government of the Virgin Islands v. United Indus. Workers, N.A.*,
    169 F.3d 172 (3d Cir. 1999)..........................................................................................8

*Green Tree Fin. Corporation-Alabama v. Randolph*,
    531 U.S. 79 (2000).................................................................................................8, 9

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
    716 F.3d 764 (3d Cir. 2013).........................................................................................6

*Harris v. Green Tree Fin. Corp.*,
    183 F.3d 173 (3d Cir. 1999).........................................................................................9

*Hopkins v. New Day Fin.*,
    643 F. Supp. 2d 704 (E.D. Pa. 2009) ............................................................................2

*Howard v. Wells Fargo Minnesota, N.A.*,
    2007 WL 2778664 (N.D. Ohio 2007) ...........................................................................8

*Kaneff v. Del. Title Loans, Inc.*,
    587 F.3d 616 (3d Cir. 2009).........................................................................................8

*Marmet Health Care Ctr., Inc. v. Brown*,
    565 U.S. 530 (2012)...................................................................................................5

*Miron v. BDOSeidman, LLP*,
    342 F. Supp. 2d 324 (E.D. Pa. 2004) ............................................................................5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
    473 U.S. 614 (1985)...................................................................................................5

*Moses H. Cone Memorial Hosp.*,
    460 U.S. at 24-25 ......................................................................................................9

*PaineWebber, Inc. v. Hartmann*,
    921 F.2d 507 (3d Cir. 1990).........................................................................................6

*Perry v. Thomas*,
    482 U.S. 483 (1987)...................................................................................................9

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)...................................................................................................9

*Thomas O'Connor & Co. v. Ins. Co. of North America*,
    697 F. Supp. 563 (D. Mass. 1988) ...............................................................................7

*Volt Info. Sciences, Inc. v. Bd. of Trustees*,
    489 U.S. 468 (1989)......................................................................................................7

**Federal Statutes**

9 U.S.C. § 1.................................................................................................................6

9 U.S.C. § 2......................................................................................................5, 6, 7, 8

**State Statutes**

63 P.S. § 818.19.........................................................................................................1, 4

73 P.S. § 201-*et seq.*.................................................................................................1, 5, 11

**Rules**

Rule 12(b)(6)..............................................................................................................6

Defendants DriveTime Car Sales Company, LLC, ("DriveTime"), improperly identified in the Complaint as "DriveTime CarSales Company, LLC d/b/a DriveTime Plymouth Meeting", Jon Ehlinger ("Ehlinger"), improperly identified in the Complaint as "Jon Ehrlinger", and Bridgecrest Acceptance Corporation ("Bridgecrest" and collectively with DriveTime and Ehlinger referred to herein as "Defendants"), respectfully submit this memorandum of law in support of their motion to compel arbitration and to stay this matter pending the completion of arbitration ("Motion").

I.  **INTRODUCTION**

Plaintiff Joyce Lyons ("Plaintiff") alleges that Defendants concealed certain alleged facts about a vehicle she financed and purchased from DriveTime.  Plaintiff claims that the alleged concealment gives rise to claims against Defendants for: (1) fraud; (2) breach of contract; (3) negligence; (4) negligent misrepresentation; (5) breach of fiduciary duty and covenants of good faith and fair dealing; (6) violations of the "Professions and Occupations Act Board of Vehicles Act", 63 P.S. § 818.19; and (7) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-*et seq*.  *See generally* Compl.  In connection with obtaining the vehicle, Plaintiff executed an arbitration agreement requiring arbitration of, *inter alia*, any claim that in any way arises from or relates to the sale and financing of the vehicle, and/or the vehicle itself.

Since each of Plaintiff's claims arise from or relate to the sale and financing of the vehicle, and/or the vehicle itself, Defendants hereby move to compel arbitration of Plaintiff's claims and request that this litigation be stayed pending the completion of arbitration.

II.  **STATEMENT OF FACTS**

On June 3, 2017, Plaintiff and DriveTime entered into a Simple Interest Retail Installment Contract (the "Contract") pursuant to which Plaintiff purchased a 2008 Acura TL

(the "Vehicle") from DriveTime.  *See* Compl. at ¶ 10; Ex. 1; *See also* Declaration of Eric Pierce ("the Pierce Declaration) at ¶ 3.[1]  A true and correct copy of the Contract is attached to the Pierce Decl. as Exhibit 1.[2]  The Contract was subsequently assigned to DT Acceptance Corporation ("DTAC") (now named Bridgecrest Acceptance Corporation effective April 5, 2016).  *See* Ex. A, Pierce Decl. at ¶ 9.  The Contract was executed by Plaintiff and Jon Ehlinger.  *See* Compl. at Ex. 1; Ex. A, Pierce Decl. at Ex. 1.  Ehlinger is the former general counsel of DriveTime.  *See* Ex. A, Pierce Decl. at ¶ 10.

At the time of purchase, Plaintiff also executed an arbitration agreement ("Arbitration Agreement") that covers disputes arising from or relating to, *inter alia*, the Contract, the Vehicle or the sale of the Vehicle, and oral and written statements related to the Contract.[3]  *See* Ex. A, Pierce Decl. at ¶ 6.  It also covers statutory claims.  *See* Ex. 2, Arbitration Agreement at p. 2.

The Arbitration Agreement defines "Us/We/Our" as "DriveTime, any purchaser, assignee or servicer of the contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of any of the foregoing." *See* Ex. 2, Arbitration Agreement at p. 1.

---

[1]   A true and correct copy of the Pierce Decl. is attached to the Motion as Exhibit A.  The Court may consider the Pierce Decl. in deciding the Motion.  *See, e.g., Gedid v. Huntington Nat. Bank*, No. CIV.A. 11-1000, 2012 WL 691637, at *5 (W.D. Pa. Feb. 10, 2012), *report and recommendation adopted*, No. CIV.A. 11-1000, 2012 WL 691614 (W.D. Pa. Mar. 2, 2012) ("In the context of [a motion to compel], the court may consider the pleadings, documents of uncontested validity, and affidavits or depositions submitted by either party."); *Black v. JP Morgan Chase & Co.*, 2011 WL 3940236, *1 (W.D. Pa. 2011) (finding that a court may consider all affidavits, exhibits and discovery in record when considering a motion to compel arbitration); *Hopkins v. New Day Fin.*, 643 F. Supp. 2d 704, 713–14 (E.D. Pa. 2009) (noting that when deciding a motion to compel, "the Court may consider all affidavits, exhibits and discovery in the record").

[2]   The Contract is also attached to the Complaint as Exhibit 1.

[3]   A true and correct copy of the Arbitration Agreement is attached to the Pierce Decl. as Exhibit 2.

The Arbitration Agreement provides the following notice at the very top:

---

**NOTICE OF ARBITRATION AGREEMENT**

Unless you reject this Agreement, this Agreement provides that upon your or our election, all disputes between you and us will be resolved by **BINDING ARBITRATION.**

If you or we elect arbitration, you will be **GIVING UP YOUR RIGHT TO GO TO COURT** to assert or defend your rights under the Contract (except for individual claims that may be taken to small claims court).

Your rights will be determined by a **NEUTRAL ARBITRATOR** AND **NOT** by a **JUDGE OR JURY. YOU WILL BE WAIVING YOUR RIGHTS TO A JURY TRIAL.**

You are entitled to a **FAIR HEARING**, but arbitration procedures are simpler and more limited than rules that apply in court. **YOU WILL NOT HAVE THE RIGHT TO BE A MEMBER OR REPRESENTATIVE IN A CLASS ACTION OR A PRIVATE ATTORNEY GENERAL ACTION IN COURT OR IN ARBITRATION.**

Arbitrator decisions are enforceable as any court order and are subject to **VERY LIMITED COURT REVIEW.**

**THE ARBITRATION ADMINISTRATOR'S FEES MAY BE MORE THAN THE FEES CHARGED BY A COURT.**

**READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE YOU SIGN.**

---

*See* Ex. 2, Arbitration Agreement at p. 1.

Further, the Arbitration Agreement defines "claim" as follows:

> Claim means any claim, dispute or controversy between you and us arising from or related to one or more of the following:
>
> (a) The Contract.
> (b) The vehicle or the sale of the vehicle.
> (c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
> (d) The relationships resulting from the Contract.
> (e) Advertisements, promotions or oral or written statements related to the Contract.
> (f) The financing terms.
> (g) Your credit application.
> (h) The origination and servicing of the Contract.
> (i) The collection of amounts you owe us.
> (j) Any repossession, or replevin, of the vehicle.
> (k) Your personal information.
> (l) The rescission or termination of the Contract.

*See* Ex. 2, Arbitration Agreement at p. 2.

Per the Arbitration Agreement, the term "claim" has the "broadest reasonable meaning," and it "includes claims of every kind and nature." *Id.* The Arbitration Agreement specifically defines "Claim" to include "statutory claims", "contract claims", "negligence and tort claims (including claims of fraud and other intentional torts)." *Id.*

The Arbitration Agreement further provides that that the Contract "involves a transaction in interstate commerce, the Federal Arbitration Act ("FAA") governs the Arbitration Agreement." *See* Ex. 2, Arbitration Agreement at p. 4.

The Arbitration Agreement also afforded Plaintiff a thirty day period to "reject" the Arbitration Agreement. *See* Ex. 2, Arbitration Agreement at p. 3. The following notice appears before the signature line of the Arbitration Agreement:

> **BY SIGNING BELOW, YOU EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE.  YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.**

*See* Ex. 2, Arbitration Agreement at p. 5. Plaintiff did not reject the Arbitration Agreement and the Complaint does not allege otherwise. *See* Ex. A, Pierce Decl. at ¶ 8.

On or about July 20, 2018, Plaintiff filed her Complaint in the Court of Common Pleas of Philadelphia, County. *See* Dkt. No. 1.[4] The Complaint alleges that Defendants concealed certain facts about the Vehicle prior to Plaintiff's purchase of same. *See generally* Compl. Specifically, Plaintiff brings claims for: (1) fraud; (2) breach of contract; (3) negligence; (4) negligent misrepresentation; (5) breach of fiduciary duty and covenants of good faith and fair dealing; (6)

---

[4]     Defendants timely removed this action to this Court. *Id.* The Court granted the parties' stipulation requesting an extension until August 31, 2018 for Defendants to respond to the Complaint. *See* Dkt. No. 3.

violations of the "Professions and Occupations Act Board of Vehicles Act," 63 P.S. § 818.19; and (7) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-*et seq*.  *Id*.

Defendants vigorously deny Plaintiff's claims.  However, the merits of Plaintiff's claims are for an arbitrator to decide because those claims arise from and relate to the Contract, the sale of the Vehicle, and the Vehicle itself.  Accordingly, Defendants hereby move to compel arbitration of those claims pursuant to the binding Arbitration Agreement.

## III.  ARGUMENT

### A.    Standard Of Review.

The Federal Arbitration Act ("FAA") provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *See* 9 U.S.C. § 2.  "[A] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id.* at § 4.  The Supreme Court has repeatedly made clear that "state and federal courts must enforce the [FAA] . . . with respect to all arbitration agreements covered by that statute."  *Marmet Health Care Ctr., Inc. v. Brown,* 565 U.S. 530, 530-31 (2012).

Under the FAA, a court must compel arbitration if it finds that:  (1) a valid arbitration agreement exists; and (2) the dispute before it falls within the scope of the agreement.  *See*, *e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626-28 (1985); *Miron v. BDOSeidman, LLP*, 342 F. Supp. 2d 324, 328 (E.D. Pa. 2004).  It is well-settled that the merits cannot be considered when deciding an arbitration motion.  *See*, *e.g.*, *AT&T Technologies, Inc. v.*

*Comm. Workers of Am.*, 475 U.S. 643, 649 (1986).  As the Third Circuit succinctly explained, the FAA requires a court to engage

> in a limited review to ensure that the dispute is arbitrable, i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement. . . .  If . . . the court determines that an agreement exists and that the dispute falls within the scope of that agreement, it then must refer the matter to arbitration without considering the merits of the dispute.

*PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990) (citations omitted).  As discussed below, a valid Arbitration Agreement exists and Plaintiff's claims fall squarely within the scope of that Arbitration Agreement.

"[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."  *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013).

As discussed below, a valid Arbitration Agreement exists and Plaintiff's claims fall squarely within the scope of that Arbitration Agreement.

**B.     The FAA Requires Arbitration of Plaintiff's Claims.**

The FAA provides that a written arbitration agreement contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Act defines "commerce" as "commerce among the several states." 9 U.S.C. § 1.  "[T]he word 'involving'. . . signals an intent to exercise Congress's commerce power to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction. . .turn[s] out, *in fact*, to have involved interstate commerce."  *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 276-

77 (1995) (emphasis in original).  In *Citizens Bank v. Alafabco, Inc.*, the United States Supreme Court confirmed that Congress, in Section 2 of the FAA, exercised "the broadest permissible exercise" of its Commerce Clause power, and it admonished (and reversed) the Alabama Supreme Court for applying a "cramped view" of the Commerce Clause power.  539 U.S. 52, 56, 58 (2003); *see also Fluor Daniel Intercontinental, Inc. v. General Elec. Co.*, No. 98 Civ. 7181(WHP), 1999 WL 637236, at *3 (S.D.N.Y. Aug. 23, 1999) ("[a]s to the 'involving commerce' requirement, courts have construed the phrase broadly").

The transaction at issue in this case easily meets the "involving commerce" requirement.  Plaintiff is a resident of Pennsylvania.  *See* Compl. at ¶ 1.  On the other hand, DriveTime is a "resident" of Arizona and Delaware, Bridgecrest is a resident of Arizona and Ehlinger is a resident of Arizona.  *See* Dkt. No. 1.  Those facts indisputably establish "commerce" within the meaning of Section 2 of the FAA.  *See*, *e.g.*, *Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 560 n.1 (N.D. Ohio 2004) ("loan transactions historically have been evaluated under the FAA because of the banking industry's connection to commerce").

Moreover, the Arbitration Agreement specifically provides that the "Contract involves a transaction in interstate commerce, the Federal Arbitration Act ("FAA") governs this Agreement."  *See* Ex. 2, Arbitration Agreement at p. 4.  That language constitutes additional compelling evidence that the FAA's interstate commerce requirement has been satisfied.  *See*, *e.g.*, *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 954 (N.D. Ohio 2009) (finding FAA applied because "the Contract itself provides that '[t]he Federal Arbitration Act governs this Arbitration Clause. . . .'"); *Thomas O'Connor & Co. v. Ins. Co. of North America*, 697 F. Supp. 563, 566 (D. Mass. 1988); *see also Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S.

468, 479 (1989) (courts must "'rigorously enforce' [arbitration] agreements according to their terms").

Accordingly, the Contract and the sales transaction underlying the claims in this case involved commerce within the meaning of the FAA and the FAA applies to this action. *See Government of the Virgin Islands v. United Indus. Workers, N.A.*, 169 F.3d 172, 176 (3d Cir. 1999) ("[t]he Supreme Court has stated that the FAA's reach coincides with that of the Commerce Clause").

1.   **A Valid And Enforceable Arbitration Agreement Exists.**

The FAA specifically provides that arbitration agreements are enforceable according to their terms:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or any agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Here, there can be no dispute that a written Arbitration Agreement exists.  Nor can there be any dispute as to the validity and enforceability of the Arbitration Agreement as the Third Circuit has held that arbitration agreements are valid and enforceable. *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 623-25 (3d Cir. 2009).

Moreover, Plaintiff bears the burden of any challenge to the Arbitration Agreement. *see Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 92 (2000); *Howard v. Wells Fargo Minnesota, N.A.*, 2007 WL 2778664, at *3 (N.D. Ohio 2007), and that is a heavy burden she cannot satisfy.  Courts may only invalidate arbitration agreements based upon generally applicable contract defenses.  9 U.S.C. § 2; *Doctor's Assocs. v. Casarotto*, 517

U.S. 681, 687 (1996).  However, such challenges must be directed specifically and solely to the arbitration agreement and may not be advanced in such a manner that would subject arbitration agreements to special scrutiny.  *See*, *e.g.*, *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967).  Thus, an arbitration agreement must be upheld and enforced by the courts even though the rest of the contract may later be held invalid by the arbitrator.  *Prima Paint*, 388 U.S. at 404; *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999).  Plaintiff simply cannot meet this heightened standard.

      **2.**      **<u>Plaintiff's Claims Fall Squarely Within The Scope Of the Arbitration Agreement.</u>**

      The FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25 (citations omitted).  Accordingly, the Supreme Court dictates that a presumption of arbitrability exists where a contract contains an arbitration clause, and that an order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute."  *AT&T Technologies, Inc.*, 475 U.S. at 650.  The presumption in favor of arbitrability "is particularly strong when the arbitration clause in question is broad," *id.,* as it is in this case.  Indeed, the Supreme Court in *Randolph* has made clear that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." 531 U.S. at 91.

      As one federal court explained in examining a similarly broad arbitration agreement:

> [w]hen faced with a broad arbitration clause, such as one covering <u>any</u> dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration.... Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.

*Davisson*, 644 F. Supp. 2d at 959 (quoting *Solvay Pharms. v. Duramed Pharms., Inc.,* 442 F.3d 471, 482 n.10 (6th Cir. 2006) (emphasis in original)).  The *Davisson* court noted that because the arbitration agreement "provides for arbitration of *any* dispute, it is broad in scope."  644 F. Supp. 2d at 959 (emphasis in original).  The court went on to find the opposing party's claims pursuant to three different state consumer protection statutes and for conversion and trespass to chattel "clearly fall within the Contract's definition of 'Dispute'" and thus "all of the parties' claims are arbitrable."  *Id.* at 960.

Similarly, Plaintiff's claims are clearly covered under the broad language of the Arbitration Agreement.  The Arbitration Agreement broadly provides for the arbitration of:

> any claim, dispute or controversy between you and us arising from or related to one or more of the following:
>
> (a) The Contract.
> (b) The vehicle or the sale of the vehicle.
> (c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
> (d) The relationships resulting from the Contract.
> (e) Advertisements, promotions or oral or written statements related to the Contract.
> (f) The financing terms.
> (g) Your credit application.
> (h) The origination and servicing of the Contract.
> (i) The collection of amounts you owe us.
> (j) Any repossession, or replevin, of the vehicle.
> (k) Your personal information.
> (l) The rescission or termination of the Contract.

*See* Ex. 2, Arbitration Agreement at p. 2.  Plaintiff's claims all arise out of purported conduct which occurred in relation to the sale of the Vehicle and the execution of the Contract.  Thus, such claims clearly arise from and relate to the Contract, the sale of the Vehicle, and the Vehicle itself and therefore they squarely fall within the scope of the Arbitration Agreement.  *See*, *e.g.*, *Berkery v. Cross Country Bank*, 256 F. Supp.2d 359, 367 (E.D. Pa. 2003).

Further, pursuant to the Arbitration Agreement, the term "claim" has the "broadest reasonable meaning," and it "includes claims of every kind and nature."  *See* Ex. 2, Arbitration Agreement at p. 2.  The Arbitration Agreement specifically defines "Claim" to include "statutory claims", "contract claims", "negligence and tort claims (including claims of fraud and other intentional torts)."  *Id.*  Therefore, Plaintiff's claims for fraud, breach of contract; negligence; negligent misrepresentation; and breach of fiduciary duty and covenants of good faith and fair dealing, are clearly arbitrable.

Plaintiff's statutory claims for alleged violations of the UTPCPL and "Professions and Occupations Act Board of Vehicles Act" are also subject to arbitration.[5]  *See*, *e.g.*, *Bill Gray Nissan, Inc. v. Am. Suzuki Motor Corp.*, No. 02-4502002, U.S. Dist. LEXIS 17297, at *7 (W.D. Pa. July 26, 2002) (compelling arbitration of Pennsylvania Board of Vehicles Act ("BVA") claim and concluding that to the extent the BVA could be read to prohibit arbitration agreements, the BVA is preempted by the FAA); *Elinch v. Discover Bank*, No. 12-1227, 2013 U.S. Dist.

---

[5]     Plaintiff's claims for alleged violations of the UTPCPL and "Professions and Occupations Act Board of Vehicles Act" both arise from or relate to the sale and financing of the Vehicle, and/or the Vehicle itself.  Plaintiff's UTPCPL claim is based on her allegation that Defendants "misrepresent[ed] the vehicle's history, condition and value, misrepresent[ed] the seller and the terms and conditions of the sale and financing . . . and violated [certain] provisions of the Pennsylvania Automotive Industry Trade Practices."  *See* Compl. at ¶ 126.  Likewise, Plaintiff's claim for alleged violation of the Professions and Occupations Act Board of Vehicles Act" is based on her allegation that Defendants made material misrepresentations in connection with the sale and financing of the Vehicle.  *See* Compl. at ¶ 117.

LEXIS 12659, at *7 (E.D. Pa. Jan. 29, 2013) (compelling arbitration of UTPCPL claim where the broad arbitration provision applied to any dispute between the parties arising from or relating to the account).

    **C.**    **Bridgecrest and Ehlinger Are Entitled to Enforce The Arbitration Agreement.**

The plain language of the Arbitration Agreement mandates arbitration of Plaintiff's claims against Bridgecrest and Ehlinger because it defines  Us/We/Our" as "DriveTime, any purchaser, assignee or servicer of the contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of any of the foregoing."  *See* Ex. 2, Arbitration Agreement at p. 1.  Bridgecrest is the assignee of the Contract and affiliate of DriveTime.  Ex. A., Pierce Decl. at ¶ 9.  Ehlinger is the former general counsel of DriveTime and, thus, an officer of company.  *Id.* at ¶ 10.  Accordingly, under the plain language of the Arbitration Agreement, Bridgecrest and Ehlinger are entitled to enforce the Arbitration Agreement.

    **D.**    **The Action Must Be Stayed Pending Arbitration.**

Section 3 of the FAA provides that where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see Collins v. Burlington N. R. Co.*, 867 F.2d 542, 545 (9th Cir. 1989) (remanding case where district court failed to consider whether a stay was appropriate as a result of binding arbitration agreement); *see also Cendant Corp. v. Forbes*, 72 F. Supp. 2d 341, 342 (S.D.N.Y. 1999) (granting a stay under Section 3 of the FAA is "mandatory if an issue in the case is referable to arbitration."). Accordingly, Defendants respectfully request that this Court stay this action pending completion of arbitration pursuant to the express terms of the Arbitration Agreement.

**IV.** **CONCLUSION**

By executing the Arbitration Agreement, Plaintiff agreed to arbitrate any claims she may have arising from or relating to the Contract, the sale of the Vehicle, and the Vehicle itself.  All of Plaintiff's claims are premised on Plaintiff's contention that Defendants concealed certain facts about the Vehicle prior to her purchase of same.  The Arbitration Agreement expressly provides for arbitration of claims against DriveTime, Bridgecrest (the assignee of the Contract, and Ehlinger (the former general counsel of DriveTime).  Accordingly, Plaintiff's claims against Defendants fall within the broad scope of the Arbitration Agreement, and as such, Plaintiff is required to submit her claims to arbitration.

Respectfully submitted,

Dated:  August 31, 2018

/s/ *Martin C. Bryce, Jr.*
Martin C. Bryce, Jr., Esquire
Jenny N. Perkins, Esquire
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T: 215.665.8500
F: 215.864.8999
bryce@ballardspahr.com
perkinsj@ballardspahr.com

*Attorneys for Defendants*