# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOYCE LYONS,

      Plaintiff,

v.

DRIVETIME CARSALES COMPANY, LLC
d/b/a DRIVETIME PLYMOUTH MEETING;
JON EHRLINGER; and BRIDCREST
ACCEPTANCE CORP.,

      Defendants.

CIVIL ACTION NO. 2:18-cv-03517

DECLARATION OF __Eric Pierce__ IN SUPPORT OF
**DEFENDANTS' MOTION TO COMPEL ARBITRATION**

I, __Eric Pierce__, declare as follows:

1. I am __Assistant Director__ of Defendant DriveTime Car Sales Company, LLC. I have been with DriveTime Car Sales Company, LLC for __17__ years. Except where based upon review of records and documents regularly maintained in the ordinary course of business, all of the matters set forth below are within my personal knowledge and, if called as a witness, I could and would testify competently to the matters stated herein. I submit this declaration in support of Defendants' Motion to Compel Arbitration.

2. In connection with my duties as __Assistant Director__, I have access to and am generally familiar with the records maintained by DriveTime Car Sales Company, LLC and its affiliates.

3. On June 3, 2017 Plaintiff Joyce Lyons ("Plaintiff") entered into a Simple Interest Retail Installment Contract (the "Contract") with DriveTime Car Sales Company, LLC ("DriveTime") pursuant to which Plaintiff purchased a 2008 Acura TL (the "Vehicle").

4. A true and correct copy of the Contract is attached hereto as Exhibit 1.

5. The Contract was executed by Plaintiff and Jon Ehlinger, in his capacity as an officer of DriveTime.

6. At the time of purchase, Plaintiff also executed an Arbitration Agreement that covers disputes arising from or relating to, *inter alia*, the Contract, the Vehicle or the sale of the Vehicle, and oral and written statements related to the Contract. A true and correct copy of the Arbitration Agreement is attached hereto as Exhibit 2.

7. The Arbitration Agreement was executed by Plaintiff and Jon Ehlinger, in his capacity as an officer of DriveTime.

8. The Arbitration Agreement provided a right to reject the agreement to arbitrate and when a rejection of the Arbitration Agreement is made, a record of such rejection is made in the ordinary course of business. If Plaintiff had rejected the Arbitration Agreement, there would be a record of such and no such record exists.

9. The Contract was subsequently assigned to DT Acceptance Corporation (now named Bridgecrest Acceptance Corporation effective April 5, 2016).

10. Ehlinger is the former general counsel of DriveTime.

I declare under penalty of perjury and subject to the provisions of 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this __31__ day of August, 2018 in Tempe, Arizona

_/s/ EP_
NAME
TITLE *ASSISTANT DIRECTOR of SALES*

# EXHIBIT 1

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

| SIMPLE INTEREST RETAIL INSTALLMENT CONTRACT | REPRINT DATE: 6/3/2017 | SALES DATE: 06/03/2017 |
|---|---|---|
| Buyer (and Co-Buyer) Name and Address<br>Joyce Lyons<br><br>33 W Main St Apt 1<br><br>Norristown, PA 19401-4718 |  | Dealer/Creditor Name and Address<br>DRIVETIME CARSALES COMPANY, LLC  DBA: DRIVETIME PLYMOUTH MEETING<br>1425 E Ridge Pike<br>PLYMOUTH MEETING, PA 19462-0000<br>6103822100<br>158000267201 |

You, the Buyer (and Co-Buyer, if any) shown above, agree to buy the motor vehicle described below (the "Vehicle") on credit subject to the terms and conditions of this contract and security agreement (the "Contract").  By signing below, you represent that you have been quoted only one cash price for the Vehicle.  "We", "us" and "our" refer to the Dealer shown above and any person to which we may transfer or assign the Contract.

| New/Used | Model Year and Make | Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2008 Acura | TL | 19UUA66248A046321 | ☒ Personal   ☐ Agricultural<br>☐ Business |

Trade-In: _____ Year  _____ Make  _____ Model

## FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid when you have made all scheduled payments | Total Sale Price The total cost of your purchase on credit, including your down payment of<br>$ 800.00 |
|---|---|---|---|---|
| 17.885 % | $ 13,422.85 | $ 21,505.63 | $ 34,928.48 | $ 35,728.48 |

Payment Schedule

| Number of Payments | Amount of Each Payment | When Payments Are Due |
|---|---|---|
| 151 | $229.80 | BiWeekly beginning 07/01/2017 |
| 1 | $228.68 | Ending 04/15/2023 |

**Prepayment:**  If you pay off your debt early, you will not have to pay a penalty.

**Late Payment:**  You must pay a late charge on the part of each payment not made within 10 days after the date the payment is due.  The charge is 2% per month of the delinquent amount.

**Security Interest:**  You are giving a security interest in the Vehicle being purchased. Please read this Contract for additional information on security interests, non-payment, default, and our right to require repayment of your debt in full before the scheduled maturity date.

RIC - Multi (PA) (7/20/15)

Page 1 of 5

The original document is owned by Bridgecrest Acceptance Corporation and this copy was created on Jun 05, 2017 06:22:10 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 2:18-cv-03517-PBT   Document 4-3   Filed 08/31/18   Page 5 of 14
158000267201

| INSURANCE |
|---|
| YOU MAY OBTAIN INSURANCE ON THE VEHICLE FROM A PERSON OF YOUR CHOICE THAT IS AUTHORIZED TO SELL SUCH INSURANCE AND IS ACCEPTABLE TO US. |
| LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED. |

| NOTICES REQUIRED BY FEDERAL LAW |
|---|
| Used motor vehicle Buyers Guide. If you are buying a used vehicle with this Contract, federal regulations may require a special Buyers Guide to be displayed on the window of the Vehicle. **THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF THE SALE.** |
| NOTICE - ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER. |

### ITEMIZATION OF AMOUNT FINANCED

1 **Purchase Price** (Including sales tax of $1,149.00 any accessories, their installation, and taxes)  $16,744.00 (1)

2 **Down Payment**
   (2a) Cash Down Payment  $800.00 (2a)
   (2b) Trade-In Allowance  $0.00 (2b)
   (2c) Trade-In Payoff  $0.00 (2c)
      Payoff To: _____
   (2d) Net Trade-In (Description Page 1) (2b minus 2c)  $0.00 (2d)
   **Total Down Payment (2a plus 2d)**  $800.00 (2)

3 **Unpaid Balance of Purchase Price** (1 minus 2)  $15,944.00 (3)

4 **Amounts Paid to Others on Your Behalf**
   (a) To Public Officials
      License, title & registration fees  $16.43
      License, title & registration fees  $102.20
      Filing fees  $24.00
   *(b) **Other Charges:**
  *To: DriveTime   For  Documentary Preparation Charge  $134.00
 **To: DriveTime   For  MotionGPS (3 yrs) plus  $695.00
 **To: DriveTime   For  SilverRock DriveCare Powertrain  $3,555.00
 **To: DriveTime   For  SilverRock GAP Coverage  $1,035.00
   **Total Amounts Paid to Others on Your Behalf (a plus b)**  $5,561.63 (4)
   ** Dealer may retain or receive a portion of these amounts paid to others, except those fees paid to public officials.

5 **Balance of Purchase Price and Other Charges** (3 plus 4)  $21,505.63 (5)

6 **Amount Financed**  $21,505.63 (6)

**Promise to Pay and Payment Terms:** You promise to pay us the Amount Financed, plus Finance Charges accruing on the unpaid balance at the rate of **17.885**% per year (the "Contract Rate") from today's date until paid in full. Finance charges accrue on a daily simple interest basis. As outlined above in the Truth In Lending Disclosures you agree to pay this Contract according to the payment schedule by paying the amount stated in the Total of Payments box, or a greater amount. You also agree to pay the late charge shown above and any additional amounts according to the terms and conditions of this Contract.

**General Terms; Payments:** You have been given the opportunity to purchase the Vehicle and any other products and services identified in this Contract for the Total Sale Price. The Total Sale Price is the total price of the Vehicle and any other products or services plus the Finance Charges if you buy them over time. You agreed to purchase the items over time. The Total Sale Price in the TRUTH IN LENDING DISCLOSURES assumes that you will make all payments as scheduled. The actual amount you will pay may be more or less depending on your payment record.

**Prepayment:** You may prepay this Contract at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. You may obtain from us or our assignee or the insurance company named in your policy or certificate of insurance a refund of any prepaid, unearned insurance premiums.

**Security Interest:** To secure your obligations, you give us a "first priority" security interest in the Vehicle, all accessions, attachments, accessories and equipment placed in or on the Vehicle and all proceeds of the Vehicle. You also agree to give us a security interest in all money or goods received for the Vehicle and all insurance premiums, service and other contracts we finance. The security interest secures payment of all amounts you owe in this Contract and performance of your other agreements in this Contract. You agree a "first priority" security interest is a security interest before any other party's lien, claim, interest or right in or to the Vehicle. You will not grant anyone else a security interest, lien or any other claim to the Vehicle without our express prior written consent. We reserve our right to setoff insurance proceeds or excess amounts of estimated official fees and taxes that we may receive against the principal amount of what you owe us under the Contract to the extent not prohibited by applicable law.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 2:18-cv-03517-PBT   Document 4-3   Filed 08/31/18   Page 6 of 14
158000267201

**Finance Charges:**  This is a simple interest Contract. The finance charges you pay will depend on how you make your payments.  Your actual finance charges may be more than the disclosed Finance Charges if you make your payments late or in less than the scheduled amount.   We will apply payments to late charges, finance charges and to the unpaid balance of the Contract in any manner we choose unless we are required by law to apply payments in a particular order. Finance charges are earned by applying the Contract Rate to the unpaid balance of the Contract for the time such balance is owed, subject to the finance charge free period, if any, described on the first page of this Contract.

**Use of Vehicle:**   You must take care of the Vehicle. You must obey all laws in using it. You must keep the Vehicle in your possession at the Buyer's address shown above, unless we approve another address in writing. You may not sell or transfer any rights in the Vehicle without our prior written consent. You must keep it free from the claims of others. You will not take it out of the United States without our prior written consent. You will immediately tell us of any change in your address or the address where the Vehicle is regularly kept. You agree not to add to the Vehicle any accessories, equipment or any other property in which any other person has an ownership or security interest.

**Warranties Seller Disclaims:**   Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this Contract, **the Seller makes no warranties, express or implied, on the Vehicle, and there will be no implied warranties of merchantability or fitness for a particular purpose.**   This provision does not affect any warranties covering the vehicle or parts thereof that the Vehicle manufacturer or parts supplier may provide.   Only the manufacturer or supplier shall be liable for performance under their warranties.

**Vehicle Insurance:** You must insure yourself and us for the term of this Contract against loss of or damage to the Vehicle with a policy in the Buyer's name. You must maintain comprehensive fire, theft and collision coverage, insuring the Vehicle in an amount acceptable to us, name us as loss payee and provide whatever evidence of insurance we request. We must approve the type and amount of insurance that you obtain. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. If you do not maintain the required insurance, we may buy substantially similar coverage at your expense. We may add the cost of such insurance to your obligations due under this Contract and/or collect those costs separately from you. You agree to pay such costs either upon our demand or in installments, subject to a finance charge at the Contract Rate, if we elect to apply a finance charge. The insurance we buy may, at our option, protect only our interest, or both your interest and ours. Insurance we buy may cost substantially more than insurance you buy. We will cancel the insurance we buy if you give us satisfactory proof of insurance reasonably acceptable to us. Whether or not the Vehicle is insured, you will pay us all you owe under this Contract even if the Vehicle is lost, damaged beyond repair, or destroyed.

You are not required as a condition of financing the purchase of the Vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker.  Your choice of insurance providers will not affect our decision to sell you the Vehicle or extend credit to you.

**Returned Check Charge:**  If you make any payment  required  by this Contract with a check that is returned or dishonored you agree to pay a charge  equal  to $15.00.  If the fee is not paid when due, we may add this fee to the unpaid balance of this Contract.

**Default:**  You will be in default if any one of the following occurs (except as may be prohibited by law):
1. You fail to make any payment due under this Contract, including any down payment, in full when such payment is due.
2. We are unable to obtain a first priority security interest in the Vehicle.
3. You give another person a security interest in the Vehicle without our consent.
4. You fail to obtain or maintain insurance on the Vehicle as required by this Contract.
5. You gave us false or misleading information on your application relating to this Contract,  if we cannot verify any information that you have provided  us,  if any information  you provided to us is false,  if we discover  a material adverse  change in such information during the review process,  or if you do not cooperate in the verification and review process described below.
6. You fail to keep any other agreement  or promise you made in this Contract.
7. You die, become incompetent, and generally fail to pay your debts when they become due or if you file a bankruptcy petition or if one is filed against you.
8. The Vehicle is lost, **damaged  beyond repair, or destroyed** or any other event occurs that causes us to believe that our prospects for payment or realization upon the Vehicle are impaired.

We may require you to pay at once the unpaid Amount Financed, the earned and unpaid part of the Finance Charge and all other amounts due under this Contract (the entire unpaid balance) if you (I) fail to make any payment under this Contract when due, (ii) fail to pay any taxes owed on the Vehicle, (iii) fail to furnish proof of payment of taxes owed on the Vehicle (iv) use the Vehicle for illegal purposes; (v) file for bankruptcy; (vi) you default in the payment of a cross-collateralized obligation; or (vii) you intentionally provide fraudulent and misleading information on a credit application. If as a consequence of your default we require that you pay the entire unpaid balance, we will charge you interest at the Contract Rate on the entire unpaid balance from the date of our notice to you demanding payment of the entire unpaid balance. Additionally, we may take back (repossess) the Vehicle. We may also take items of personal property found in the Vehicle when we take back the Vehicle and hold them for you.   If, after providing you with notice of our intent to dispose of such personal property as required by law and after allowing you time to claim  the  property  as  required  by  applicable  law  you  do  not  claim  your  personal  property,  we  will  dispose  of  the  personal  property  in  a commercially reasonable manner.

We may cancel any insurance or other products or services you have purchased in this Contract and apply any refunds we receive to the amount you owe. You agree to pay for the costs of a lawsuit and our reasonable attorney's fees if we take the Property through legal action. At the time we take the Property, you must pay the expenses for taking, repairing, and storing the Property as allowed by law. We may only collect expenses from you if more than 15 days passed from the day you broke the terms of this Contract to the day we took the Property.

If we take back the Vehicle, we will sell it unless you exercise any right to cure, reinstate the Contract or redeem the Vehicle that you may have under state law.  The sale proceeds, less the actual amounts we pay for retaking, holding, preparing for disposition, processing and disposing of the Vehicle, and less our attorneys' fees and legal costs to the extent such costs, fees and expenses are permitted by applicable law, will be used to pay the amount you owe on this Contract.  Any money left will be paid to you unless the law requires that we pay it to someone else.  If the sale proceeds are not enough to pay off this Contract and costs, and we have complied with the applicable notice requirements, you will be obligated to pay us what is still owed (the deficiency).

We can, without notice, delay enforcing our rights or exercise only part of them without losing them, waive a right we have without waiving it for subsequent opportunities to exercise that right, and waive a right we have as to one Buyer without waiving it as to the other(s). You also expressly waive demand for payment, notice of non-payment, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate and notice of acceleration.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 2:18-cv-03517-PBT   Document 4-3   Filed 08/31/18   Page 7 of 14
158000267201

**Assignment:**   You may not assign your rights under this Contract without our permission.

**General:**  Any change in this Contract must be written and signed by you and us.  The law of the state of the Dealer's place of business shown in this Contract applies to this Contract.  If that law does not allow all the agreements in this Contract, the ones that are not allowed will be void. The rest of this Contract will still be good.

Any provision that appoints us as an agent is not subject to the provisions of 20 Pa. Con. Stat. Section 5601 *et seq.* (Chapter 56; Decedents, Estates and Fiduciaries Code).  We, by exercising any of our rights under this Contract, do so for the sole benefit of us.

**After-Sale Review and Verification Process:**  The Vehicle sold to you is subject to an after-sale review and verification of the information you have provided to us. You have agreed to cooperate with the after-sale review and verification process.

**Limitation on Damages:**   Unless prohibited  by law,  you shall not  be entitled  to recover  from  us any consequential, incidental  or punitive  damages,  damages  to  property  or  damages  for  loss of use, loss  of time,  loss  of profits,  or income or any other similar damages.   We are not liable for any failure or delay in delivering the Vehicle to you if it is beyond our control, not our fault or we are not negligent.

**References/Credit Reports:**  We may contact your employer or your references to verify the information you provided to us in your application or in connection with this Contract. We may also contact your employer or your references if we are unable to locate you. The servicer of this Contract  may also do so. Federal or state law may limit these contacts. You also consent to us or a servicer, obtaining a credit report(s) in connection with the servicing of the Contract.

**Odometer (mileage):**   Each of  your  and  our  representations  regarding odometer  readings  are  subject  to  information  provided  by others, including government agencies. We each understand that this information is not always accurate.  As permitted by applicable law, neither of us is responsible for any inaccuracies in  this information to  the  extent it is not the party's fault.

**Disclosure on Airbags:**  We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of the airbag(s) on the Vehicle unless otherwise disclosed to you on the AutoCheck Vehicle History Report.  You acknowledge that we have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and you accept the Vehicle without representation or warranty from us. You further acknowledge that you had the opportunity to have the airbag(s) checked by someone of your choice prior to the completion of the sale.

**Liability Insurance Required:**  You understand that state law requires you to purchase and maintain liability insurance. We do not provide liability insurance for you and it is not included in your Contract. You are not required as a condition of financing the purchase of the Vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker.  Your choice of insurance providers will not affect our decision to sell you the Vehicle or extend credit to you.

**Record Retention:**  You agree  that  we may  maintain  documents  and  records  related  to the  Vehicle  and the  Contract electronically, including,  but not limited to, documents  and record images,  and that we may dispose of original documents. You agree that a copy of any such electronic records  may be used and shall be deemed to be the same as an original in any arbitration, judicial, or non-judicial or regulatory proceeding relating to the Vehicle.

**Statement of Account:**  You have the right to request and receive a completed and detailed statement of account as provided for in Pa. Cons. Stat. tit. 12 § 6230(a). You can request the statement of account any time after execution of this Contract and within 1 year after the termination of this Contract. We will provide you one statement without charge. For additional statements, we will assess a reasonable fee not to exceed the cost of production.

**Assignment of Dealer:**  For value received, Dealer hereby transfers to BRIDGECREST ACCEPTANCE CORPORATION ("Assignee") all of its right, title, and interest in the Contract and the Vehicle. This transfer and assignment is made pursuant to and is subject to any Agreement between Dealer and Assignee by which Assignee has agreed to accept the transfer and assignment of contracts from Dealer.

**Arbitration Agreement:**  The arbitration agreement entered into between you and Dealer is incorporated by reference into and is a part of this Contract.

If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.

**Vehicle Service Contract & Optional Products Disclosure:**  Any Vehicle Service Contract you entered into between you and Dealer is incorporated by reference into and is a part of this Contract.  The Optional Products Disclosure you signed is incorporated by reference into and is a part of this Contract.

**Communication Consent:**  You agree that we may monitor and record telephone calls regarding your account to assure the quality of our service or for other reasons.  You agree that we may call you, using an automatic telephone dialing system or otherwise, leave you a voice, prerecorded, or artificial voice message, or send you a text, e-mail, or other electronic message for: 1) telemarketing or advertising purposes, 2) any purpose related to the servicing and collection of your accounts with us, or 3) for surveys or research (each a "Communication").  You agree that we may send a Communication to any telephone numbers, including cellular telephone numbers, or email addresses you provided on the first page of this Application.  Your consent is not required as a condition of financing or purchase.  You can revoke consent at any time by calling 800-967-8526 or by writing DriveTime Customer Service at P.O. Box 52020, Phoenix, AZ 85072.  You also agree that we may include your personal information in a Communication.  You agree that we will not charge you for a Communication, but your service provider may.  In addition, you understand and agree that we may always communicate with you in any manner permissible by law that does not require your prior consent.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

## NOTICE TO BUYER

DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.

X  *Joyce Lyons*  Retail Sales Contract
**Buyer Signs**

X  Retail Sales Contract
**Co-Buyer Signs**

By signing below, the Dealer/Creditor accepts this Contract

X  *Jon Ehlinger*
**Dealer**

BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1, 2, 3, 4 AND 5 OF THIS CONTRACT AND ACKNOWLEDGES RECEIVING A COPY OF THIS CONTRACT.

X  *Joyce Lyons*
**Buyer Signs**

X  _____
**Co-Buyer Signs**




RIC - Multi (PA) (7/20/15)  Page 5 of 5

The original document is owned by Bridgecrest Acceptance Corporation and this copy was created on Jun 05, 2017 06:22:10 AM.

# EXHIBIT 2

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.



# ARBITRATION AGREEMENT

---

**NOTICE OF ARBITRATION AGREEMENT**

Unless you reject this Agreement, this Agreement provides that upon your or our election, all disputes between you and us will be resolved by **BINDING ARBITRATION**.

If you or we elect arbitration, you will be **GIVING UP YOUR RIGHT TO GO TO COURT** to assert or defend your rights under the Contract (except for individual claims that may be taken to small claims court).

Your rights will be determined by a **NEUTRAL ARBITRATOR** AND **NOT** by a **JUDGE OR JURY**. **YOU WILL BE WAIVING YOUR RIGHTS TO A JURY TRIAL.**

You are entitled to a **FAIR HEARING**, but arbitration procedures are simpler and more limited than rules that apply in court. **YOU WILL NOT HAVE THE RIGHT TO BE A MEMBER OR REPRESENTATIVE IN A CLASS ACTION OR A PRIVATE ATTORNEY GENERAL ACTION IN COURT OR IN ARBITRATION.**

Arbitrator decisions are enforceable as any court order and are subject to **VERY LIMITED COURT REVIEW**.

**THE ARBITRATION ADMINISTRATOR'S FEES MAY BE MORE THAN THE FEES CHARGED BY A COURT.**

**READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE YOU SIGN.**

---

"Us/We/Our" means DriveTime, any purchaser, assignee or servicer of the contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of any of the forgoing. "Us/We/Our" also means any third party providing any product or service in connection with or incidental to the Contract, the sale of the vehicle and/or other goods or services covered by the Contract and/or related to the vehicle, if such third party is named as a co-defendant with us in a Claim you assert. "Us/We/Our" have these meanings only for this Agreement. This Agreement is part of, and is hereby incorporated into, the Contract. However, whenever in this Agreement the term "Contract" is used, it does not include this Agreement.

"You/Your" means and/or any of your heirs or personal representatives.

"Contract" means Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement), Number: 158000267201   Dated: 06/03/2017   and any prior Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) that you previously had with us.

"Agreement" means this Arbitration Agreement.



158000267201 100150

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 2:18-cv-03517-PBT   Document 4-3   Filed 08/31/18   Page 11 of 14
158000267201

"Including" and "includes" mean "including but not limited to."

This Agreement describes how a Claim may be arbitrated instead of litigated in court.

"Claim" means any claim, dispute or controversy between you and us arising from or related to one or more of the following:

    (a) The Contract.

    (b) The vehicle or the sale of the vehicle.

    (c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.

    (d) The relationships resulting from the Contract.

    (e) Advertisements, promotions or oral or written statements related to the Contract.

    (f) The financing terms.

    (g) Your credit application.

    (h) The origination and servicing of the Contract.

    (i) The collection of amounts you owe us.

    (j) Any repossession, or replevin, of the vehicle.

    (k) Your personal information

    (l) The rescission or termination of the Contract.

"Claim" has the broadest reasonable meaning. It includes claims of every kind and nature. This includes initial claims, counterclaims, cross-claims, third-party claims, statutory claims, contract claims, negligence and tort claims (including claims of fraud and other intentional torts).  However, notwithstanding any language in this Agreement to the contrary, a "Claim" does not include a dispute about the validity, enforceability, coverage or scope of this Agreement (including, without limitation, the paragraph below captioned "No Class Actions or Private Attorney General Actions," the final sentence under the paragraph below captioned "Miscellaneous" and/or this sentence); any such dispute is for a court, and not an arbitrator to decide.  This exclusion from the definition of a "Claim" does not apply to any dispute or argument that concerns the validity or enforceability of the Contract as a whole; any such dispute or argument is for the arbitrator, not a court, to decide.

Even if you and we elect to litigate a Claim in court, you or we may elect to arbitrate any other Claim, including a new Claim in that lawsuit or any other lawsuit.  Nothing in that litigation waives any rights in this Agreement.

However, notwithstanding any language in this Agreement to the contrary, the term "Claim" does not include (i) any self-help remedy, such as repossession or sale of any collateral given by you to us as security for repayment of amounts owed by you under the Contract; or (ii) any individual action in court by one party that is limited to preventing the other party from using such self-help remedy and that does not involve a request for damages or monetary relief of any kind.  Also, we will not require arbitration of any individual Claim you make in small claims court or your state's equivalent court, if any.  If, however, you or we transfer or appeal the Claim to a different court, we reserve our right to elect arbitration.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 2:18-cv-03517-PBT   Document 4-3   Filed 08/31/18   Page 12 of 14
158000267201

**Your Right to Reject this Agreement. You have the right to reject this Agreement, in which event neither you nor we will have the right to require arbitration of any Claims. Rejection of this Agreement will not affect any other aspect of your Contract. In order for you to reject this Agreement, we must receive a signed writing ("Rejection Notice") from you within 30 days of the day you enter into the Contract, stating that you reject the Agreement. The Rejection Notice must include your name, address and Contract Number and must be mailed to us at: <u>Attn Legal, 1720 W. Rio Salado Pkwy, Tempe, AZ 85281</u> by certified mail, return receipt requested. Upon receipt of your Rejection Notice, we will credit your Contract for your postage cost. If the Rejection Notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the Rejection Notice on your behalf. If you reject this Agreement, that will not constitute a rejection of any prior arbitration agreement between you and us.**

<u>Selection of Arbitration Administrator</u>. Unless prohibited by applicable laws, any Claim shall be resolved, on your election or ours, by arbitration under this Agreement.

You may select as the administrator either of the organizations listed at the end of this Agreement. If we want to arbitrate, we will tell you in writing. That may include a motion to compel arbitration that we file in court. You will have 20 (twenty) days to select the administrator (or, if you dispute our right to require arbitration of the Claim, 20 (twenty) days after that dispute is finally resolved). If you do not choose an administrator within the 20-day period, we will do so.

If for any reason the administrator is unable, unwilling, or ceases to be the administrator, you will have 20 (twenty) days to choose the other organization listed at the end of this Agreement. If you do not select a new administrator within that period, we will do so. If neither organization is willing or able to be the administrator, then the administrator will be selected by the court. Notwithstanding any language in this Agreement to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any administrator that has in place a formal or informal policy that is inconsistent with the paragraph below captioned "No Class Actions or Private Attorney General Action."

If a party files a lawsuit in court asserting Claim(s) that are subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party prosecuting the Claim(s) to commence the arbitration proceeding.

<u>Location of Hearing</u>. Any arbitration hearing you attend shall be in the federal judicial district of your residence.

<u>No Class Actions or Private Attorney General Action</u>. Notwithstanding any language herein to the contrary, if you or we elect to arbitrate a Claim, neither you nor we will have the right to: (1) participate in a class action in court or in arbitration, either as a class representative, class member or class opponent; (2) act as a private attorney general in court or in arbitration, or (3) join or consolidate your Claim(s) with claims of any other person, and the arbitrator shall have no authority to conduct any such class, private attorney general or multiple-party proceeding. This paragraph does not apply to any lawsuit filed against us in court by a state or federal government agency even when such agency is seeking relief on behalf of a class of borrowers including you. This means that we will not have the right to compel arbitration of any claim brought by such an agency.

<u>Notice and Cure; Special Payment</u>: Prior to initiating a Claim, you may give us a written Claim Notice describing the basis of your Claim and the amount you would accept in resolution of the Claim, and a reasonable opportunity, not less than 30 days, to resolve the Claim. If (i) you submit a Claim Notice in accordance with this Paragraph on your own behalf (and not on behalf of any other party); (ii) you cooperate with us by promptly providing the information we reasonably request; (iii) we refuse to provide you with the relief you request; and (iv) the arbitrator subsequently determines that you were entitled to such relief (or greater relief), you will be entitled to a minimum award of at least $7,500 (not including any arbitration fees and attorneys' fees and costs to which you will also be entitled).

<u>Fees and Expenses</u>. An arbitration administrator and arbitrator may waive or reduce its fees for financial hardship. If you ask in writing, we will pay all administrator and arbitrator fees up to $2,500 that the administrator will not waive for any Claims you assert in good faith.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 2:18-cv-03517-PBT   Document 4-3   Filed 08/31/18   Page 13 of 14
158000267201

We will consider in good faith your request to pay all or part of any administrator or arbitrator fees over $2,500 ("additional fees").  To the extent we do not approve your request, if the arbitrator issues an award to you, we will still pay you for additional fees you must pay the administrator and/or arbitrator as follows:

    (1) In the case of additional fees based on the amount of your Claim or the value of the relief you sought, we will pay you an amount equal to the fees you would have paid if the amount of your Claim or the value of the relief you sought had been the amount or value of the award to you.

    (2) In the case of other additional fees not based on the amount of your Claim or the value of the relief you sought, we will pay you for the amount of such additional fees.

    (3) If we are required to pay any greater sums under applicable law or in order for this Agreement to be enforced, we will pay such amounts.

We will bear the administrator and arbitrator fees we are normally required to pay and will also bear the expense of our attorneys, experts and witnesses, except where applicable law and the Contract allow us to recover attorneys' fees and/or court costs in a collection action we bring.  You will bear the expense of your attorneys, experts and witnesses if we prevail in an arbitration.  However, in an arbitration you commence, we will pay your reasonable fees if you prevail or if we must bear such fees in order for this Agreement to be enforced.  Also, we will bear any fees if applicable law requires us to.

<u>Applicable Law, Award of Arbitrator and Right to Appeal</u>.  Because the Contract involves a transaction in interstate commerce, the Federal Arbitration Act ("FAA") governs this Agreement.  The arbitrator shall apply applicable substantive law consistent with the FAA.  The arbitrator shall apply applicable statutes of limitations.  The arbitrator is authorized and given the power to award all remedies that would apply if the action were brought in court.  This authorization and power is limited by any constitutional limits that would apply in court.  Either party may make a timely request for a brief written explanation of the basis for the award.  The arbitrator shall not apply federal or state rules of civil procedure or evidence.

Judgment on the arbitrator's award may be entered in any court with jurisdiction.  Otherwise, the award shall be kept confidential.

The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA.  However, if the amount of the Claim exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party.  The decision of the panel shall be by majority vote.  Reference in this Agreement to "the arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken.  The costs of such an appeal will be borne in accordance with the paragraph captioned "Fees and Expenses" above.

<u>Miscellaneous</u>.  This Agreement survives payment of all you owe under the Contract.  It also survives your bankruptcy and any sale by us of your Contract.
If there is a conflict or inconsistency between the administrator's rules and this Agreement, this Agreement governs.  If there is a conflict or inconsistency between this Agreement and the Contract, this Agreement governs.  If a court or arbitrator deems any part of this Agreement invalid or unenforceable under any law or statute consistent with the FAA, the remaining parts of this Agreement shall be enforceable despite such invalidity.  However, if a court limits or voids any part of the above paragraph captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this entire Agreement (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal such limitation or voiding.

This Agreement (if you do not reject) will supersede any prior arbitration agreement between you and us with respect to any Claim.

BY SIGNING BELOW, YOU EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.

*Joyce Lyons*
_____
Customer Signature

_____
Customer Signature

DriveTime CarSales Company, LLC
By: _____*Jon Ehlinger*_____   Dated: 06/03/2017
    Authorized Employee



### ARBITRATION ADMINISTRATORS

If you have a question about the administrators mentioned in this Agreement or if you would like to obtain a copy of their arbitration rules or fee schedules, you can contact them as follows:

American Arbitration Association (AAA)
13455 Noel Road, Suite 1750
Dallas, TX 75240-6620
www.adr.org

J.A.M.S./Endispute
700 11th Street, NW, Suite 450
Washington, DC 20001
www.jamsADR.com
(800) 352-5267